**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARIF WILLIAMSON,** | : | **CIVIL NO. 3:CV-12-0755** |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | |
| **DAVID A. VARANO, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

On April 18, 2012, Plaintiff Sharif Williamson ("Plaintiff" or "Williamson"), an inmate presently confined at the State Correctional Institution Coal Township ("SCI Coal Township") in Coal Township, Pennsylvania, initiated a civil rights action pro se by filing a Complaint under the provisions of 42 U.S.C. § 1983. The Complaint, dated April 11, 2012, was docketed at Civil No. 3:CV-12-0726.

On April 23, 2012, a second § 1983 civil rights Complaint was received by the Clerk of Court from Williamson. This Complaint was docketed at the above-referenced docket number of Civil No. 3:CV-12-0755. Because both Complaints contained the same claims asserted against the same Defendants, by Order dated April 27, 2012, we construed the second filed Complaint as an Amended Complaint and directed the consolidation of the cases. (Doc. 8.) The cases were consolidated into the above docket number because Williamson had filed his properly completed paperwork to proceed in forma pauperis in this case.

Based upon Williamson's request to proceed in forma pauperis, the Amended Complaint

(Doc. 1) is before the Court for screening under the provisions of 28 U.S.C. § 1915. For the reasons set forth below, Williamson's request to proceed in forma pauperis will be granted for the sole purpose of filing this action, and the Amended Complaint will be dismissed with prejudice with regard to Williamson's first and third claims for failure to state a claim, and dismissed without prejudice with regard to Williamson's second claim, under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. Allegations of the Amended Complaint

In his Amended Complaint, Williamson names as Defendants the following members of the SCI Coal Township staff: Warden David Varano; Deputy Superintendent A. Luscavage; Lieutenant Fago; and Corrections Officer Carpenter. The Amended Complaint contains allegations concerning Williamson's diet, prison conditions, and lost and damaged property. First, Williamson alleges that, on February 15, 2012, he filed a grievance inquiring as to why he was not getting the same diet that he got in general population, and alleges that the response stated that if he felt he was getting more food in general population, he should improve his behavior. (Doc. 1 at 2 § IV. ¶ 1.) Williamson alleges that this response shows that "the facility used food as a punishment." (Id.)

Next, Williamson alleges that, on March 26, 2012, Defendant Fago walked Williamson through bird droppings and that Williamson was not wearing shoes. (Id. ¶ 2.) Williamson alleges that, when he wrote to Defendant Varano about this occurrence, the Warden responded that he did not care about his problem or his welfare. (Id.)

Finally, Williamson alleges that Defendant Carpenter did not follow Department of Corrections ("DOC") policy when he packed his property when Williamson was returning from the medical department, and that, as a result, some of Williamson's pictures of his children, his legal work, and his glasses were lost, and his Qu'ran is "mess[ed] up." (Id. ¶ 3.)

Williamson seeks injunctive relief in the form of a change in prison policies as well as a transfer to the State Correctional Institution Graterford. (Id. at 3 § V ¶ 1.) He also seeks monetary damages and the return of his "law works." (Id. ¶ 2.)

On May 10, 2012, Williamson submitted copies of his grievances relating to the claims in this action and of responses to some of those grievances. (Docs. 10, 11.) We construe these filings as exhibits to Williamson's Amended Complaint (Doc. 1).

## II. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed in forma pauperis if the court determines that the complaint "fails to state a claim on which relief may be granted." In making this determination, courts apply the same standards as they would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). In reviewing a motion to dismiss, a court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the plaintiff's factual allegations. Morrison v. Madison Dearborn Capital Partners III L.P., 463 F.3d 312, 314 (3d Cir. 2006). The controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (citation omitted). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103,

108 (3d Cir. 2002).

## III. Analysis

Preliminarily, we observe that Williamson names Deputy Superintendent A. Luscavage as a Defendant but fails to include any specific factual allegations against him in the Amended Complaint. To establish liability for the deprivation of a constitutional right, a plaintiff must demonstrate personal involvement by a defendant. Rode v. Delarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement may be established through: 1) personal direction or actual participation by the defendant in the misconduct; or 2) knowledge of and acquiescence in the misconduct. Id. Where Williamson has failed to make any allegations against Luscavage, he has failed to state a claim upon which relief may be granted against him.

Turning to Williamson's three claims against remaining Defendants, we construe his first two claims concerning his diet and prison conditions as invoking his right to be free from cruel and unusual punishment under the Eighth Amendment, and analyze them under the following standard.

While "[t]he Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones . . . ." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, the Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See id.; Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel

and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 418 (3d Cir. 2000).

To establish an Eighth Amendment claim, Williamson must meet two requirements. First, he must demonstrate that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. Farmer, 511 U.S. at 834. Secondly, he must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). As described by the Supreme Court in Farmer, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. Farmer, 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

In Wilson, the Court observed that "[*s*]*ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Wilson, 501 U.S. at 304 (emphasis in original).

Williamson's first claim is that he was not receiving the same diet as he had been

receiving when he was confined in the general population and that the response to his grievance, namely that if he feels he receives more food in general population he should improve his behavior, is an indication that food is being used as a punishment. (See Doc. 1 at 2 § IV. ¶ 1.) We first observe that Williamson fails to allege how any named Defendant is involved in this claim. Notwithstanding this point, accepting Williamason's allegations as true, and in considering his exhibits to his Amended Complaint, it is apparent that his allegation does not implicate a substantial risk of serious harm to his health or safety. Among Williamson's exhibits is a copy of an initial grievance dated April 12, 2012 in which he points to the fact that he received French toast that morning for breakfast when he was on a "no egg" diet as evidence that he was not being treated like he is human. (See Doc. 11 at 3.) In explaining his decision to uphold the initial response denying the grievance, Varano specifically states that, "[w]hether you are housed in the RHU or general population the portion sizes on the diet do not change." (See Doc. 10-1 at 4.) Varano also states that, "Mr. Snyder advises that if you continue to feel there is more food on the general population trays then you should work on improving your behavior to get back out into general population." (See id.) In addition, Varano states as follows:

> [Mr. Snyder] also advised you that just because eggs are removed from the morning tray, does not necessarily mean they are replaced with a different item on that tray. Rather, your next meal may reflect the added calories to make up the morning loss due to the eggs being removed. This is not a form of punishment, but rather staff following DOC policy guidelines on this matter. I fail to see where you are 'getting burnt' as reflected. Facility Manager upholds the initial review response.

(See id.) In considering the allegations in Williamson's Complaint, and his exhibits, it is apparent that he has not identified a sufficiently serious risk of harm to his health or safety with regard to the amount of food he was receiving. Williamson also has failed to allege that any prison official had the requisite culpable state of mind to deprive him of one of life's basic necessities where his own exhibits show that prison officials were not withholding food, but rather were providing the same amount of food regardless of where he was housed, and also were accommodating his special diet request. We therefore must dismiss Williamson's first claim for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). We also find that where Williamson's own exhibits contradict his claim that he was receiving less food and/or food was being used as punishment, any attempt by him to further amend his claim would be futile, and therefore, our dismissal of his first claim will be with prejudice. See Alston, 363 F.3d at 235.

Turning to Williamson's second claim that, on one occasion, Defendant Fago walked him through bird droppings while Williamson was not wearing shoes, we find that this claim likely fails to implicate a harm of sufficient gravity to state an Eighth Amendment claim upon which relief may be granted. As unpleasant as this experience must have been, without the inclusion of more facts, the allegation simply does not rise to the level of posing an excessive risk to one's health or safety. See Farmer, 511 U.S. at 834 (1994)(to establish an Eighth Amendment claim, the alleged deprivation must be, objectively, "sufficiently serious"); see also

Helling v. McKinney, 509 U.S. 25, 36 (1993)(Plaintiff must show that the risk of which he complains is grave enough to offend "contemporary standards of decency"); Caldwell v. Luzerne County Corrections Facility Management Employees, 732 F. Supp. 2d 458 (M.D. Pa. 2010)(proponent of an Eighth Amendment claim must show that he has been deprived of "the minimal civilized measure of life's necessities")(citation omitted). Williamson's handwritten Complaint, along with the other documents of record, fails to provide any detail concerning this allegation, and the Court is unable to discern the circumstances under which they arose. It is possible that Williamson could provide additional facts surrounding the incident that, under the relevant case law, would permit his claim to survive. For instance, Williamson could allege facts that illustrate that he was subjected to actions that offend "contemporary standards of decency." As a result, the Court will dismiss Williamson's second claim without prejudice.

Williamson also fails to make any allegations that suggest that Fago acted with a sufficiently culpable state of mind in having him walk through bird droppings. *See* Farmer, 511 U.S. at 834 (to violate the Cruel and Unusual Punishments Clause, a prison officer must have a "sufficiently culpable state of mind"). We also find that Williamson's claim that Varano responded to his complaint about this incident by stating that he did not care about Williamson's problem is contradicted by his own exhibits. Specifically, Williamson has submitted a copy of a response provided by Varano dated April 13, 2012 to a grievance Williamson submitted in which Williamson refers to this incident of having to walk through bird droppings and complains to Varano about how he runs the facility. (Doc. 11 at 2.) Varano's response states, in pertinent

part, "I'm not seeing where you get that Lt. Long or me [sic] don't care about your issues or inhumane treatment." (Id.) Thus, it is apparent that Varano did not state that he does not care, but instead stated that he did not understand where Williamson got the idea that he does not care. Based on the foregoing, without alleging more facts, Williamson likely fails to state an Eighth Amendment claim upon which relief may be granted with regard to his second claim. Unlike Williamson's first claim, however, an amendment to this second claim may ultimately allow Williamson to state a claim upon which relief may be granted, and therefore, we shall dismiss the claim without prejudice.

Williamson's final claim is that Defendant Carpenter lost some of his property and damaged his Qu'ran. (Doc. 1 at 2 § IV. ¶ 3.) The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "'An unauthorized intentional deprivation of property' by prison officials does not violate the Due Process Clause 'if a *meaningful* post-deprivation remedy for the loss is available.'" Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)) (emphasis added). Adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process. See Tapp v. Proto, 404 Fed. Appx. 563, 567 (3d Cir. 2010).

Williamson does not allege that he was not provided with a meaningful post-deprivation remedy in the form of being able to file a grievance or a state tort action. Moreover, it is apparent from his submitted exhibits that he was provided with a confiscation form dated March

26, 2012 for various items that were confiscated, including photographs, a Georgetown Law Journal, and a Qu'ran, and that the confiscation form specifically advises that, "[u]pon confiscation, the inmate has 15 days to file a grievance, in accordance with DC-ADM 804, Inmate Grievance Procedure." (See Doc. 10 at 2.) Williamson does not allege that he was denied the opportunity to file a grievance. Moreover, the copies of various grievances Williamson filed relating to his various claims that he has submitted as exhibits demonstrate that he had unrestricted access to the grievance system. Consequently, Williamson fails to state a due process claim upon which relief may be granted. Where it is apparent that Williamson had adequate post-deprivation remedies available to him, no amendment to his claim would allow him to state a due process claim upon which relief may be granted, and thus, dismissal of his third claim also will be with prejudice. See Alston, 363 F.3d at 235.

For the foregoing reasons, the Amended Complaint will be dismissed with prejudice as to Claims I and III, and dismissed without prejudice as to Claim II. An appropriate Order follows.

DATE: May 17, 2012

Robert D. Mariani
United States District Judge